**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANGEL MILLER, AND STEVEN VANNESS ON BEHALF OF THEMSELVES, AND ALL OTHERS SIMILARLY SITUATED, | : : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -vs- | : | |
| | : | |
| UNITED DEBT SETTLEMENT, LLC, | : | Case No. |
| EVERYTHING IS IN STOCK, LLC d/b/a | : | |
| ELITE RESTAURANT EQUIPMENT, | : | |
| MARCEL BLUVSTEIN AND | : | |
| GABRIEL GORELIK. | : | Hon. |
| | : | |
| | : | |
| Defendants. | : | |

## CLASS ACTION COMPLAINT AND REQUEST FOR DECLARATORY RELIEF AND JURY DEMAND

Plaintiffs Angel Miller and Steven VanNess state the following claims for relief:

### Introduction

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C, Section 1681b(f) regulates the access and use of consumer reports in order to protect consumer privacy. This case involves the illegal use of and access to the private financial data in the consumer reports of likely tens of thousands of financially distressed consumers. The information was accessed for the illegal purpose of marketing debt settlement and/or consolidation services. Defendants obtained lists of consumer data, lists referred to as "pre-screened lists," including Plaintiffs'. Defendants used the lists to market debt settlement services.

The pre-screened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The pre-screened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S.C. Section 1681b(f); *See*, *Trans Union v FTC,* 245 F.3d 809 (U.S. App. D.C. 2001).

Accordingly, Plaintiffs Angel Miller and Steven VanNess bring this action to obtain monetary damages, injunctive relief, attorneys' fees, punitive damages and costs in this action and any other relief to which they may be entitled individually and for the putative Class.

### Jurisdiction, Venue and Parties

1. This is a class action brought under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), as well as Southern District of Ohio Local Rule 23.1–3, seeking monetary and declaratory relief, individually for Plaintiffs and for the putative Class.

2. This Court maintains subject matter jurisdiction pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as further alleged herein.

3. This Court may also exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to any federal law claims under 28 U.S.C. § 1367.

4. Over two-thirds of the putative Class Members are domiciled in Ohio.

5. The transactions and occurrences which give rise to this action occurred in Fayette and Franklin County Ohio.

6. Venue is proper in the Southern District of Ohio.

7.      The Plaintiffs to this lawsuit are Angel Miller, who resides in Fayette County at 2011 Good Hope New Holland Rd., New Holland, Ohio, 43145 and Steven VanNess who resided in Franklin County at 907 Woodhill Drive, Columbus, Ohio 43212.

8.      The Defendants to this lawsuit are as follows:

      a.  United Debt Settlement, LLC ("United") which is a corporation doing business in Ohio and located at 241 W. 30th Street, 3rd Floor, New York, New York, 11228, and whose statutory agent is United States Corporation Agents, Inc. which maintains its address at 7014 13th Avenue, Suite 202, Brooklyn, New York, 11228.

      b.  Everything Is In Stock, LLC doing business as Elite Restaurant Equipment ("Elite Restaurant") which is a corporation doing business in Ohio and maintaining an address at 301 Mount Pleasant Avenue, Newark, New Jersey 07104 whose statutory agent is Marcel Bluvstein which maintains its address at 301 Mount Pleasant Ave., Newark, NJ 07104.

      c.  Defendant Marcel Bluvstein ("Bluvstein") is a natural person operating and directing United from an address at 241 W. 30th Street, 3rd Floor, New York, New York 10001.

      d.  Defendant Gabriel Gorelik ("Gorelik") is a natural person operating and directing United from an address at 241 W. 30th Street, 3rd Floor, New York, New York 10001.

9.      Elite Restaurant is currently owned and operated by Marcel Bluvstein and he directs, controls and participates in every action including the illegal practices complained of herein. Bluvstein and Gorelik are co-founders and officers of United and both have had knowledge of the

illegality of their marketing scheme since at least 2019. Both have continued to direct United and its agents to continue the illegal marketing scheme detailed in this Complaint.

10.     For the purposes of this Complaint, unless otherwise indicated, "Defendant" or "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named in this caption.

11.     Defendants, acting alone or in concert with other companies, unlawfully obtained Miller and VanNess's consumer reports and used them illegally to obtain information for the purpose of sending deceptive solicitations for debt adjustment/debt settlement and credit repair services. Defendants have misused the illegally obtained data of Plaintiffs as well as tens of thousands of similarly situated Ohioans.

12.     Additionally, Defendants, including Elite Restaurant and Bluvstein, fraudulently represented to Trans Union, LLC ("Trans Union") that VanNess and Miller were requesting a credit transaction presumably for the purchase of restaurant equipment when, in fact, this was only a ruse to access VanNess and Miller's entire consumer report. Accessing and using Plaintiffs' report in this manner is also illegal and a violation of the Fair Credit Reporting Act, and Defendants have engaged in this illegal conduct damaging Plaintiffs as well as tens of thousands of similarly situated Ohioans.

13.     On behalf of themselves, and all others similarly situated, Plaintiffs seek damages for the harm caused by Defendants' unlawful acts and a declaration that Defendants have acted unlawfully.

## Statement of Facts

14.     All named Defendants engaged in a scheme to obtain and use protected consumer

reporting data to market debt settlement and credit repair services via mailers directed to Miller and VanNess in the State of Ohio.

15.     To that end, United, through an authorized agent, compiled or directed an agent to compile a "pre-screened list" containing the names and addresses of consumers in financial distress.

16.     United obtained and used these pre-screened lists containing the names and addresses of consumers who met certain criteria such as minimum debt balances or high interest rates, etc.; Miller and VanNess were on at least two of these lists.

17.     These lists are compiled by a consumer reporting agency using the filters supplied to the consumer reporting agency by United's marketing agent.

18.     The lists constitute consumer reports under the FCRA.

19.     United then arranged for the preparation and mass mailing of marketing letters to the consumers on the pre-screened lists obtained from the consumer reporting agency.

20.     United and its co-defendants did not offer a firm offer of credit to Ohio consumers it sent the VanNess template solicitation.

21.     United and its co-defendants never intended to honor the purported firm offer of credit it sent to Ohio consumers, including the sham firm offer of credit sent to Miller. United used these solicitations for the sole purpose of marketing debt settlement.

### The Miller Mailer

22.     As an integral part of United's marketing, Miller received one of the mailed solicitations, which is attached as Exhibit A and incorporated herein. Two other Ohio consumers received identical mailers, other than the personally identifiable data within the mailers, attached as Exhibits B and C.[1]

---

[1] Both Ohio consumers/witnesses responded to the mailers, were immediately denied a loan, and were pitched a debt settlement program.

23.    Defendants' representations on the mailer itself provides proof the mailer was populated with data from a consumer report while, at the same time, demonstrating the alleged firm offer of credit was nothing more than a sham. Some of the relevant language is as follows:

a.    Miller had "been pre-selected for a special low interest rate personal loan."

b.    "This pre-screened offer of credit is based on information in your credit report indicating that you meet certain criteria."

c.    "We do not broker loans and do not make an/or fund any product offerings, loans, or credit decisions." And, "This solicitation does not constitute an offer to lend."

d.    Other representations include that no collateral was required for the loan, and that there is no pre-payment penalty.

e.    "**Pre-selected Credit Offer:** You received this offer because you meet our initial criteria."

f.    "If you are not approved, other options may be available." Under the FCRA, such consumer reports can only be obtained and used for a permissible purpose, and no other.

24.    Thousands of Ohio citizens received identical mailers, other than their personal data, yet were immediately turned down for loans and pitched a debt settlement program.

25.    Defendants never intended to honor the sham firm offer of credit contained within the Miller solicitation.

26.    On September 30, 2020, Miller called the number listed on the mailer and spoke with Alisha at United Funds Distribution Center. Alisha told Miller that she was in the intake department, and that she would gather some information from Miller and forward Miller to a financial consultant.

27.     Miller was attempting to gather information regarding the potential loan, and nothing else at that time.

28.     Later that day, on September 30, 2020, Miller received a call from Brandon Roe ("Roe"), a representative of United. Roe indicated Miller was $16,000 in debt; he discussed consolidating the debt.

29.     Roe told Miller that her credit score was compromised and that she did not qualify for the loan and immediately pitched a debt settlement program rather than offering a loan.

30.     At some point during the debt settlement sales pitch, Roe directed Elite Restaurant to perform a "hard" inquiry to obtain Miller's Trans Union consumer report fraudulently representing the purpose as a credit transaction.

31.     Miller had never heard of Elite Restaurant and Roe did not disclose to her that Elite Restaurant was accessing her consumer report for a credit transaction.

32.     Miller was not attempting to engage in a business transaction with Elite Restaurant and had no interest or need to purchase restaurant equipment through a credit transaction.

33.     While agreeing that United could perform an inquiry, Miller did not authorize Elite Restaurant to perform a "hard pull" from Elite Restaurant and had no business relationship with Elite Restaurant.

34.     At no time did Miller authorize a hard inquiry because she was seeking credit from Elite Restaurant Equipment.

35.     At no time did Roe request authorization for a hard inquiry to access Miller's Trans Union consumer report on behalf of Elite Restaurant Equipment for a credit transaction.

36.     Miller did not, and has never, had any business relationship or conducted any business transactions with Elite Restaurant Equipment.

37.      Bluvstein uses Elite Restaurant's status as a seller of restaurant equipment to manufacture a permissible purpose to illegally procure consumer reports on behalf of United's and his personal gain.

38.      Bluvstein and Gorelik knew their employee were using Elite Restaurant in an illegal manner for the personal benefit of Bluvstein and Gorelik, but still directed the employees to do so.

39.      Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

40.      Miller did not authorize Defendant United to access her consumer report information prior to the mailer being sent to her, and she did not authorize Elite Restaurant to obtain her consumer report at any time.

41.      United is not in the business of providing loans to Ohio consumer.

42.      Neither United nor Elite Restaurant had the intention of honoring the purported firm offer of credit in the mailer sent to Miller or providing a loan to Miller through Elite Restaurant.

43.      United and Elite Restaurant commonly uses this "bait and switch" method of advertising to obtain private and protected financial data from a consumer reporting agency through a marketing agent.

44.      United then "denies" the loan and pitches a debt settlement program as it did with Miller.

45.      United and its Codefendants have collectively performed this illegal marketing scheme with tens of thousands of Ohio citizens.

**The VanNess Mailer**

46.      VanNess received one of the mailed solicitations, which is attached as Exhibit D and incorporated herein.

47.     Defendants' representations on the mailer, and during the debt settlement pitch in response to the mailer provides proof the mailer was populated with data from a consumer report. Some of the relevant language is as follows:

a.      While claiming the data is an estimate, United estimates VanNess's current monthly payment and credit card balances very accurately.

b.      The mailer refers to VanNess's "high balances on your credit cards" which can only be located in a consumer report.

c.      The mailer represents there is an "Alert" on VanNess's credit score.

d.      The mailer identifies the type of debt as "Consumer Debt."

e.      The mailer indicates United possesses "**CONFIDENTIAL INFORMATION**" and that this confidential information is in regard to VanNess's credit card balances.

f.      In response to the letter, VanNess called the toll-free number indicated on the letter and spoke to a United representative named Sara Bupasiri ("Bupasiri'). Bupasiri pitched a debt settlement program and upon VanNess's inquiry as to where the data originated in the mailer, Bupasiri indicated it probably came from Trans Union.

g.      Bupasiri further represented United "partners" with Trans Union and Trans Union probably thought VanNess could benefit from their services.

h.      Trans Union does not in fact partner with debt settlement companies, including United, nor does it provide private consumer data to companies such as United to market debt settlement services.

i.      Trans Union only provides consumer reports, such as those used to populate VanNess's mailer, for the marketing of firm offers of credit or insurance.

48. Obtaining and using a consumer report for marketing a debt settlement program is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

49. Bupasiri further requested VanNess authorize a "soft pull" on his consumer report.

50. While agreeing that United could perform a "soft" inquiry, Plaintiff did not authorize any company to perform a "hard pull." VanNess was only gathering facts about the program described in the solicitation and was not engaging in a business transaction with United or any other company.

51. VanNess did not authorize Elite Restaurant to access his consumer report with either a "soft pull" or "hard pull."

52. VanNess was not attempting to engage in a business transaction with Elite Restaurant and had no interest or need to purchase restaurant equipment through a credit transaction. In fact, VanNess had never heard of Elite Restaurant until he later checked his Trans Union consumer report.

53. Elite Restaurant fraudulently disclosed to Trans Union that its permissible purpose for accessing VanNess's consumer report was a "Credit Transaction."

54. VanNess was not attempting to engage in a credit transaction with Elite Restaurant and had no interest or need to purchase restaurant equipment through a credit transaction.

55. United was likewise not offering a credit transaction and no discussion had occurred between Bupasiri and VanNess of a credit transaction.

56. Neither United nor Elite Restaurant had a permissible purpose to perform a hard inquiry on VanNess's consumer report.

57.     Elite Restaurant is owned by Bluvstein, and Bluvstein uses Elite Restaurant as a fraudulent means of pulling consumer reports for consumers that call United in response to United's illegal solicitations.

58.     Bluvstein is co-mingling the two Defendant companies' assets and resources and using both to further his fraudulent and illegal scheme..

59.     All Defendants engaged in the scheme/conspiracy as alleged in this complaint in an effort to target Ohio consumers and likely did target tens of thousands of Ohio consumers, of which VanNess was one. All Defendants knew with certainty that the deceptive mailer and illegal scheme targeted at VanNess in the State of Ohio would injure him and other Ohioans and that the injury would occur in the State of Ohio.

60.     All Defendants knew Elite Restaurant did not have a permissible purpose to access VanNess's consumer report and that the "credit transaction" Elite disclosed to Trans Union was only a sham to once again access VanNess's consumer report illegally.

61.     The Elite Restaurant inquiry was a hard inquiry causing damages in the form of a reduced credit score.

62.     This hard inquiry was later disclosed to subsequent potential lenders and further damaged VanNess's ability to obtain credit.

63.     The mailer indicates in bold **Est. Immediate Savings: $32,200** when in fact the debt settlement program offers no immediate savings.

64.     The mailer also states, "Due to your high balances on your credit cards, you have qualified to participate in the 2020 Credit Card Balance Relief Program." No such program exists.

65.     The mailer further indicates that it is necessary to call before 3/2/2021 with approval ID OH0121-11074C, that it is imperative you contact one of the advisors immediately, to respond by

3/2/2021 to ensure your enrolment benefits do not expire, and that VanNess is eligible until 3/2/2021. These representations create a false sense of urgency and no such deadlines exist to enroll in United's debt settlement program.

66.     United deceptively represents in its solicitation that "Enrollment is limited in the city of Columbus, call now before open enrollment closes" when in fact enrollment is not limited in any way and the concept of "open enrollment" does not exist for a debt settlement program.

67.     The solicitation at issue represents or implies United has **CONFIDENTIAL INFORMATION** Re: Your Credit Card Balances, and that there is an "alert" regarding VanNess's credit score. This language is inaccurate and only designed to create a sense of urgency to the consumer to increase the response rate to the marketing campaign.

68.     As set forth above, all Defendants are a "suppliers" as defined by the OCSPA, R.C. § 1345.01(C), since United is engaged in the business of debt adjusting, budget counseling, debt management, or debt pooling services, or holding oneself out, by words of similar import, as providing services to debtors in the management of their debt to a consumer in the State of Ohio for purposes that were primarily for personal, family or household use.

69.     Since at least 2019, both Bluvstein and Gorelik knew the mailing campaigns were illegal but continued to direct United and its marketing agent to engage in the illegal marketing scheme.

70.     Defendants are responsible for any of the actions of its agent under the doctrine of *respondent superior.*

**CLASS ALLEGATIONS**

71.     Plaintiffs bring this action individually and on behalf of all those similarly situated as members of the following class:

> **Ohio citizens on the prescreened lists Defendants obtained, either directly or through and agent, and/or used from May 1, 2017 to the present for marketing debt relief services.**

72.     Plaintiffs also identify the following sub-classes:

    a.  Ohio Citizens who received the mailer with the template attached as Exhibit A from May 1, 2017 to the present, and who, after responding to the mailer by calling the telephone number on the mailer, were bait and switched from a loan offer to a debt settlement program sales pitch.

    b.  Ohio Citizens who received the mailer template attached as Exhibit A or B from May 1, 2017 to the present, and who, after responding to the mailer by calling the telephone number on the mailer, were then convinced under false pretense to authorize a credit inquiry by United, only to have their consumer report accessed for a "Credit Transaction" by Elite Restaurant.

    c.  Ohio Citizens who received the mailer template attached as Exhibit A or B from May 2, 2017 to the present, and who then called United in response to the mailer because they were deceived by the false and deceptive representations on the face of the mailers.

73.     Plaintiffs are members of this putative Class.  Specifically excluded from this Class are the following: (1) Defendants and any entity in which either Defendants have a controlling interest, and the officers, directors, employees, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity; and (2) any judge or judicial officer with responsibility over the management or resolution of this litigation and members of any such individual's immediate family.

74.     The action is properly brought and maintainable under Fed. R. Civ. P. 23 for the following reasons:

    a.  The anticipated and projected size of the Class is so numerous that joinder of all members is impracticable.  Upon information and belief, Defendants have engaged, and continues to engage, in large scale direct-mail solicitation direct toward at least tens of thousands of Ohioans, as indicated in part by the attached Exhibit A and B form solicitation letters.  Accordingly, the projected size of the class is likely greater than tens of thousands of Ohioans.

b. There are common questions of law and fact that predominate over any questions solely affecting individual Class Members. Among such common questions of law and fact are the following:

    i. Does the Defendants' systematic and uniform method of obtaining, providing and/or using the consumer reports for direct-mail marketing debt relief services violate the FCRA?

    ii. Does the Defendants' systematic, uniform practice of making a false or sham offers of loans fail to satisfy the FCRA's firm offer of credit requirement?

    iii. What measure of FCRA statutory damages will compensate the Class for the identical and uniform harm suffered.

    iv. Does the Defendants' systematic and uniform practice of making multiple false and deceptive representations on the face of the mailers violate the Ohio Consumer Sales Practices Act.

    v. What measure of damages will compensate the Class for the identical and uniform harm suffered.

c. Plaintiffs' claims are typical of the claims of other Class Members because they are identical to the claims of the putative Class Members. In particular, the legal theory, any applicable defenses, and the claimed relief are all identical with respect to the Class under the FCRA and OCSPA.

d. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no interest antagonistic to those of other Class Members, and Plaintiffs have retained attorneys experienced as counsel in class actions, consumer protection, and complex litigation. More specifically, among other reasons, counsel have successfully prosecuted similar FCRA litigation in this jurisdiction. The firms representing Plaintiffs and the putative Class have more than 45 years of combined experience handling consumer and complex civil litigation, including previous successful FCRA class action litigation in this District.

75. In addition, this class action is superior to the other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Given the size of individual Class Members' claims—between $100 and $1,000 in statutory damages under the FCRA—and the expense of litigation, few if any Class Members could afford to, or would, seek legal redress individually for the wrongs Defendants have committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions.

As of the date of filing this complaint, Plaintiffs are aware of no individual actions pending in the State of Ohio.

b. When the liability of Defendants has been adjudicated, claims of all Class Members can be administered efficiently and/or determined by the Court. Indeed, as noted above, Plaintiffs' counsel has successfully settled a similar FCRA class action without administration or efficiency problems. Likewise, the Defendants' business records contain the names and addresses of the putative Class Members.

c. The class action will promote an orderly and expeditious administration and adjudication of the class action. Economies of time, effort, and resources will be fostered, and uniformity of decisions will be ensured.

d. Without a class action, the Class Members will continue to suffer damages and Defendants' unlawful conduct will be unaccounted for while they continue to reap and retain the substantial benefits of their wrongful actions.

76. No difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action. Rather, those harmed by Defendants can be readily identified and their claims efficiently administered through Defendants' business records—the pre-screened lists at issue in this action.

77. Prosecuting separate actions by or against individual members of the class would create risk of (A) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and/or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

78. Notice can be provided to members of the Class by regular U.S. Mail because Defendants should maintain a database with prescreened lists of all Class Members.

79. The maintenance of any sub-classes may be appropriate under Fed. R. Civ. P. 23(c)(4).

## COUNT ONE
### Violation of the Fair Credit Reporting Act
### Willful Noncompliance, 15 U.S.C. § 1681n

80.     Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

81.     Plaintiffs are a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

82.     Defendants, alone or through a marketing agent, obtained information and data on Plaintiffs' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living from a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. §1681a(f).

83.     The marketing agent then disclosed Plaintiffs' most private consumer reporting data to Elite Restaurant in order to use in Elite Restaurant's marketing campaign.

84.     All Defendants illegally accessed Plaintiffs' consumer report once again when Plaintiffs responded to the solicitation at issue. Elite Restaurant fraudulently represented to Trans Union Plaintiffs were engaging in a "credit transaction" when Plaintiffs were only gathering information about United's debt settlement program.

85.     The information is therefore a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

86.     Defendants willfully obtained and used Plaintiffs' consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n.

87.     Defendants willfully obtained and used Plaintiffs' consumer reports to utilize the information for marketing debt settlement services. Under section 607 of the Fair Credit Reporting Act, it is clearly stated that the purpose for which a consumer report is sought must be certified, and that it must be further certified that the information will be used for no other purpose 15 U.S.C. § 1681e.

88.     Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

89.     Due to Defendants' conduct, Plaintiffs have suffered actual damages by Defendants' invasion of their privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages and embarrassment upon learning that his most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

**COUNT TWO**
**Violation of the Fair Credit Reporting Act**
**Negligent Noncompliance, 15 U.S.C. § 1681o**

90.     Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

91.     Defendants negligently obtained and used Plaintiffs' consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

92.     The information obtained is a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

93.     Defendants negligently obtained and used Plaintiffs' consumers report without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

94.     Due to Defendants' conduct, Plaintiffs and proposed Class members have suffered actual damages by Defendants' invasion of her privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages, and embarrassment upon learning that her most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

## COUNT THREE
### Violation of the Fair Credit Reporting Act
### False Pretenses--15 U.S.C. § 1681q

95.     Plaintiffs repeat, re-allege, and incorporate by reference, as though set forth herein, the prior paragraphs of this Complaint.

96.     Elite Restaurant and United accessed Plaintiffs' and the Proposed Class Members' consumer reports under false pretenses.

97.     Elite Restaurant and United violated the FCRA by knowingly and willfully procuring information on Plaintiffs under false pretenses, 15 U.S.C. § 1681q.

**98.**     All Defendants acted knowingly and willfully. Bluvstein and Gorelik knew the conduct described throughout this Complaint was illegal and, regardless of that fact, they directed the Defendant business entities to continue their illegal activity.  Defendants' willful conduct is illustrated by the following:

(a)     The FCRA was enacted in 1970; Defendants have had over 50 years to become compliant;

(b)     Defendants violated a clear statutory mandate set forth in 15 U.S.C. § 1681q;

(c)     All Defendants knew United was not, and had no intention of, making a firm offer of credit. Similarly, the individual Defendants and Elite Restaurant knew the consumers responding to the mailers had no business relationship with Elite Restaurant, were not being offered a credit transaction through Elite Restaurant and were not being offered a credit transaction at all.

(d)     Defendants systematically procured consumer information without permissible purposes despite myriad statutory text and guidance.

(e) By adopting such a policy and practice, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

69. Plaintiffs are entitled to Statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiffs are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiffs are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FOUR
### Violations of the Ohio Consumer Sales Practices Act

99. Plaintiffs' repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

100. The interactions between Plaintiffs and Defendants were a "consumer transaction" as defined by R.C. § 1345.01(A) as Defendants solicited a service to Plaintiffs, an individual, for purposes that are primarily personal, family or household. Defendants did this by mailing Plaintiffs a solicitation to procure their business. The purpose of the mailed solicitation was personal in nature and Defendants solicited Plaintiffs to provide them services for their personal debt in exchange for various fees.

101. The mailers sent to Plaintiffs as well as the ensuing telephone sales pitch for debt settlement services were riddled with deceptive and fraudulent representations.

102. Defendants are "suppliers" as defined by R.C. § 1345.01(C) as it engaged Plaintiffs in the soliciting of a consumer transaction by attempting to procure Plaintiffs' business by sending them mailed solicitations in an attempt to provide Plaintiffs with debt adjustment/debt settlement services in exchange for various fees.

103.    Plaintiffs are a "consumer" as defined by R.C. § 1345.01(D) as they engaged in consumer transactions with Defendants, a supplier. Defendants solicited Plaintiffs via the mailers attached as Exhibits to this Complaint and invited them to call.

104.    All parties are a "person" as defined by R.C. §1345.01. A person includes an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or other legal entity. Plaintiffs are persons and Defendants, a legal entity, is also a person.

105.    Defendants committed material unfair, deceptive, and/or unconscionable acts and practices in connection with a consumer transaction, primarily for personal, family or household purposes, in violation of the Ohio Consumer Sales Practices Act, including, but not limited to:

> a.    Making false or misleading statements to induce a purchaser to pay for services in violation of R.C. § 1345.02(A).

> b.    Knowing of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

> c.    Using a sales presentation which makes the material facts of the offer misleading or conveys or permits an erroneous impression as to the services offered for sale.

> d.    Indicating in the mailed solicitations, attached as exhibits to this Complaint, that "[i]t is imperative that you contact one of our advisors immediately to ensure your enrollment benefits do not expire." No expiration date exists for Defendants' offer.

e. Indicating in the mailed solicitation, "Important Notice:  Enrollment is Limited in the City of Columbus, call now before Open Enrollment closes." Enrollment is not limited in the City of Columbus.  And enrollment never closes.

f. Indicating in the mailed solicitation, "FAILURE TO RESPOND TO THIS NOTICE WILL AFFECT YOUR ELIGIBILITY." There was no eligibility for Van Ness to qualify for nor was there any deadline.

g. Indicating in the mailed solicitation that the estimated immediate savings is $32,200 when there are no immediate savings in United's debt settlement program.

h. Defendants violated O.A.C. 109:4-3-03(B)(2) and engaged in deceptive acts or practices in connection with a consumer transaction because the first contact it had with VanNess was secured by through deception when Defendants sent a misleading letter to Plaintiff.

i. Defendants violated O.A.C. 109:4-3-10(A) and engaged in deceptive acts or practices in connection with a consumer transaction because Defendants made representations, claims, or assertions of fact about the status of Plaintiffs' debt balances, monthly payments, interest rates and high balance revolving debt in an effort to convince a reasonable consumer to call immediately and retain Defendants' services.

106. Plaintiffs were in fact deceived by the alleged violations and as a result of the preceding violations by Defendants, Plaintiffs have suffered injury in the form of mental and emotional hardship, physical, mental and emotional stress, anxiety, embarrassment and monetary damages caused by the deceptions in the mailers previously described in this Complaint.

**Prayer for Relief**

      **WHEREFORE**, Plaintiffs and the Class respectfully request that this Court:

1.     ISSUE an order declaring that the Defendants have engaged in acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.01 et seq., and the Fair Credit Reporting Act, 15 U.S.C, §§1681, et seq.

2.     ISSUE a Permanent Injunction enjoining the Defendants, its agents, servants, employees, successors or assigns, and all persons acting in concert and participation with it, directly or indirectly, through any corporate device, partnership, or other association, under this or any other name, from engaging in the acts and practices which Plaintiffs complain in the State of Ohio until complying with the laws of the State of Ohio and satisfaction of any monetary obligations to Plaintiffs.

3.     GRANT judgment against the Defendants in the amount of three times the actual damages or $200.00 for each unlawful act specified, whichever is greater, pursuant to R.C. § 1345.09(B).

4.     Statutory Damages for violations of the Fair Credit Reporting Act, 15 U.S.C, §§1681, et seq.

5.     Actual damages, reasonable attorney's fees, court costs, and punitive damages pursuant to R.C. § 47192.10.

6.     Costs and reasonable attorney fees, pursuant to R.C. § 1345.09(F)(2).

7.     Punitive damages.

8.     GRANT such other relief as this Court deems to be just, equitable and appropriate.

**[SIGNATURE BLOCK ON FOLLOWIN PAGE]**

Respectfully submitted:

/s/ Jeremiah E. Heck
Jeremiah E. Heck (0076742)
Gregory Zuchowski (0098449)
Luftman, Heck & Associates, L.L.P.
6253 Riverside Drive, Suite 200
Dublin, Ohio 43017
Phone: (614) 224-1500
Fax: (614) 224-2894
jheck@lawLH.com

/s/ Brian M. Garvine
Brian M. Garvine (0068422)
Law Office of Brian M. Garvine LLC
5 E. Long Street, Suite 1100
Columbus, Ohio 43215
Phone: (614-223-0290)
Fax: (614) 221-3201
Brian@garvinelaw.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs, Angel Miller and Steven VanNess, demand trial by jury in this action.

/s/ Jeremiah E. Heck
Jeremiah E. Heck (0076742)

**Financial Disbursement Center**
241 West 30th Street
3rd Floor
New York, New York 10001

Reference Eligibility ID:
OH0528-27739L

View your eligibility

**Call** Direct: 1-877-299-5995

| State | |
|---|---|
| OH | Respond By: 7/8/2020 |

**SAVINGS AVAILABLE**

**CURRENT**

| | |
|---|---|
| Debt Balance | $20,000 |
| Interest Rate | 16% |
| Payment | $600 |

**FLEXIBLE PERSONAL LOAN**

| | |
|---|---|
| Debt Balance | $20,000 |
| Interest Rate | 5.49% |
| Payment | $300 |

**INITIAL MONTHLY SAVINGS:** $300

**INITIAL ANNUAL SAVINGS:** $3,600



**CONGRATULATIONS** Angel

You have been selected to apply for a Personal Loan up to $20,000 with a rate as low as 5.49%.

Call us at 1-877-299-5995 today to get funded within **24** hours.

Dear Angel,

You have been pre-selected for a special low interest rate personal loan. This Personal Loan can reduce your monthly debt payments for credit cards or get you cash for any purpose.

No collateral is required and there is no pre-payment penalty.

The process is quick. If a Personal Loan is approved funds are wired directly into your bank account. If you are not approved, other options may be available. Pay off bills, make a large purchase. Fix up your home. Take your family on a vacation, reduce monthly payments and enjoy life!

DOCUMENT HAS A COLORED BACKGROUND. SECURITY FEATURES LISTED ON BACK

**FINANCIAL DISBURSEMENT CENTER**

6/26/2020

PAY UP TO: Twenty Thousand Dollars and No Cents**********

AMOUNT DOLLARS $20,000

NOT NEGOTIABLE. NOT TRANSFERABLE.
NO CASH OR ACTUAL VALUE.

TO THE ORDER OF
17*2*7108***********MIXED AADC 945
Angel Miller
2011 Good Hope New Holland Rd
New Holland, OH 43145-9626

CALL 1-877-299-5995

AUTHORIZED SIGNATURE

EXHIBIT
A

**Financial Disbursement Center**
241 West 30th Street
3rd Floor
New York, New York 10001

Reference Eligibility ID:
**OH1114-25740**

View your eligibility

**Call Direct: 1-877-299-5995**

| State | |
|---|---|
| **OH** | **Respond By: 12/25/2019** |

### SAVINGS AVAILABLE

CURRENT

| Debt Balance | $25,000 |
|---|---|
| Interest Rate | 16% |
| Payment | **$750** |

FLEXIBLE PERSONAL LOAN

| Debt Balance | $25,000 |
|---|---|
| Interest Rate | 5.49% |
| Payment | **$375** |

**INITIAL MONTHLY SAVINGS:  $375**

**INITIAL ANNUAL SAVINGS:  $4,500**

### CONGRATULATIONS Steven

**You have been selected to apply
for a Personal Loan up to $25,000
with a rate as low as 5.49%.**

**Call us at 1-877-299-5995 today to get
funded within 24 hours.**

Dear Steven,

You have been pre-selected for a special low interest rate personal loan. This Personal Loan can reduce your monthly debt payments for credit cards or get you cash for any purpose.

No collateral is required and there is no pre-payment penalty.

The process is quick. If a Personal Loan is approved funds are wired directly into your bank account. If you are not approved, other options may be available. Pay off bills, make a large purchase. Fix up your home. Take your family on a vacation, reduce monthly payments and enjoy life!



DOCUMENT HAS A COLORED BACKGROUND, SECURITY FEATURES LISTED ON BACK

**FINANCIAL DISBURSEMENT CENTER**

11/14/2019

PAY UP TO:  Twenty Five Thousand Dollars and No Cents**********

| | AMOUNT DOLLARS: | **$25,000** |
|---|---|---|

TO THE ORDER OF
2*2*769***********ALL FOR AADC 430
Steven Katz
299 E Deshler Ave
Columbus, OH 43206-2710

NOT-NEGOTIABLE, NOT-TRANSFERABLE.
NO CASH OR ACTUAL VALUE.

**CALL** 1-877-299-5995

AUTHORIZED SIGNATURE

EXHIBIT
B

FUNDED IN 24 HOURS CALL 1-877-299-5995

To Open This Side - Slide Finger Under This Edge

**2019**

**IMPORTANT INFORMATION ENCLOSED**

FRST STD
U.S. POSTAGE
PAID
SACRAMENTO CA
PERMIT NO. 1827

ENDORSE HERE

X

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

**Opt-in Notice:**
By contacting us you are agreeing to allow us and its third-party affiliates to contact you in the future by telephone mail, telephone, SMS, and/or other forms of media (both physical and electronic). If you would like to opt out of future communications, please let us know.

**Prescreen and Opt-Out Notice:**
This prescreened offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria.

If you do not want to receive prescreened offers of credit from this and other companies, call 1-888-567-8688 or visit the website at www.optoutprescreen.com. or write TransUnion Opt-Out Request PO Box 505, Woodlyn, PA 19094-0505; Experian Information Systems, Inc. PO Box 919, Allen, TX 75013; Equifax Options PO Box 740123, Atlanta, GA 30374-0123. We do not broker loans and do not make and/or fund any product offerings, loans, or credit decisions.

This solicitation does not constitute an offer to lend. We will securely submit the information you provide to a lender. Providing your information to us does not guarantee approval for a product offering. For details, questions or concerns regarding your application, please contact your lender directly or contact us.

**Pre-selected Credit Offer:** You received this offer because you meet our mail criteria. If your application information does not meet the criteria used during our pre-selection or you are unable to submit your full credit eligibility criteria, we may not approve your application.

Annual percentage rates (APRs) through its range from 5.49% APR (A %) to 40.99% APR for first time borrowers with the lowest rates for the most creditworthy borrowers. Minimum loan amount is $3,100.00. Maximum loan amount is $35,000.00 depending on your creditworthiness and requires that you meet credit and other conditions.

**Financial Disbursement Center**
241 West 30th Street
3rd Floor
New York, New York 10001

| SAVINGS AVAILABLE | |
|---|---|
| **CURRENT** | |
| Debt Balance | $43,000 |
| Interest Rate | 16% |
| Payment | $1,290 |

Reference Eligibility ID:
OH0121-44655C

View your eligibility

**Call Direct: 1-877-299-5995**

| FLEXIBLE PERSONAL LOAN | |
|---|---|
| Debt Balance | $43,000 |
| Interest Rate | 5.49% |
| Payment | $645 |

| State | | |
|---|---|---|
| OH | Respond By: 3/2/2021 | |

| INITIAL MONTHLY SAVINGS: $645 |
| INITIAL ANNUAL SAVINGS: $7,740 |



## CONGRATULATIONS Mark

**You have been selected to apply
for a Personal Loan up to $43,000
with a rate as low as 5.49%.**

**Call us at 1-877-299-5995 today to get
funded within 24 hours.**

Dear Mark,

You have been pre-selected for a special low interest rate personal loan. This Personal Loan can reduce your monthly debt payments for credit cards or get you cash for any purpose.

No collateral is required and there is no pre-payment penalty.

The process is quick. If a Personal Loan is approved funds are wired directly into your bank account. If you are not approved, other options may be available. Pay off bills, make a large purchase. Fix up your home. Take your family on a vacation, reduce monthly payments and enjoy life!



DOCUMENT HAS A COLORED BACKGROUND. SECURITY FEATURES LISTED ON BACK.

1/21/2021

**FINANCIAL DISBURSEMENT CENTER**

PAY UP TO: Forty Three Thousand Dollars and No Cents**********

AMOUNT DOLLARS: **$43,000**

NOT-NEGOTIABLE, NOT-TRANSFERABLE.
NO CASH OR ACTUAL VALUE.

TO THE ORDER OF
9*2*5014**********ALL FOR AADC 430
Mark Kubasak
212 Auburn Dr
Newark, OH 43055-8093

CALL 1-877-299-5995

AUTHORIZED SIGNATURE

THIS IS NOT A CHECK

FUNDED IN 24 HOURS CALL 1-877-299-5995



EXHIBIT
C

Scanned with CamSc...

ENDORSE HERE

X

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

**Opt-in Notice:**
By contacting us you are agreeing to allow us and its third party affiliates to contact you in the future by electronic mail, telephone, SMS, and/or other forms of media both physical and electronic. If you would like to opt out of future communications, please let us know.

**Prescreen and Opt-Out Notice:**
This prescreened offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria.

If you do not want to receive prescreened offers of credit from this and other companies, call 877-299-3561 or visit the website at www.optoutprescreen.com or write: TransUnion Opt Out Request, PO Box 505, Woodlyn, PA 19094-0505; Experian Information Systems, Inc. PO Box 919, Allen, TX 75013; Equifax Options PO Box 740123, Atlanta, GA 30374-0123. We do not broker loans and do not make and/or fund any product offerings, loans, or credit decisions.

This solicitation does not constitute an offer to lend. We will severely submit the information you provide to a lender. Providing your information to us does not guarantee approval for a product offering. For details, questions, or concerns regarding your application, please contact your lender directly or contact us.

**Pre-selected Credit Offer:** You received this offer because you meet our initial criteria. If your application information differs from the information used during our pre-selection or you are unable to meet our full credit eligibility criteria, we may not approve your application.

Annual Percentage rates (APRs) through us range from 5.49% APR (AA) to 30.01% APR for first-time borrowers, with the lowest rates for the most creditworthy borrowers. Minimum loan amount is $3,000.00. Maximum loan amount is $35,000.00. Eligibility is not guaranteed, and requires that you meet credit and other conditions.

---

**IMPORTANT INFORMATION ENCLOSED**

PRST STD
U.S. POSTAGE
PAID
SACRAMENTO, CA
PERMIT NO. 1827

2020



Scanned with CamScanner

## 2020 Credit Card Balance Relief Program

| Est. Current Monthly Payment: $2,010 | Est. New Monthly Payment: $1,005 |
|---|---|
| **Est. Interest Savings: $61,180** | **Est. Immediate Savings: $32,200** |

Dear Steven,

Due to your high balances on your credit cards, you have qualified to participate in the 2020 Credit Card Balance Relief Program.

It is imperative that you contact one of our advisors immediately at **TOLL FREE: 877-777-9705** to confirm your enrollment. Respond by **3/2/2021** to ensure your enrollment benefits do not expire.

<u>Important Notice</u>: Enrollment is limited in the city of Columbus, call now before open enrollment closes.

These new programs may enable you to reduce your debt while drastically reducing your monthly payments without traditional strict guidelines for credit history, income or employment status.

<u>IT IS NECESSARY TO CALL BEFORE 3/2/2021 WITH APPROVAL ID: OH0121-11074C</u>

### TOLL FREE: 877-777-9705

Se Habla Español 888-377-0179

Department Hours: Mon – Fri 8am- 8pm; Sat 9am-3pm EST

2020 CREDIT CARD BALANCE RELIEF

## FAILURE TO RESPOND TO THIS NOTICE WILL AFFECT YOUR ELIGIBILITY

Clients who stay according to this debt relief program can realize approximate savings of 50% before fees, or 30% including fees, over 12 to 48 months. We do not charge any fees until the debt is settled. All claims are based on enrolled debts. Not all debts are eligible for enrollment. Not all clients complete our program for reasons such as, their ability to save sufficient funds. Estimates based on prior results, which will vary based on specific circumstances. We do not guarantee that your debts will be lowered by a specific amount or percentage or that you will be debt-free within a specific period. Our program is not available in all states. Please consult with a bankruptcy attorney for more information on bankruptcy. If you have any additional questions, please contact us

| APPROVAL ID<br>OH0121-11074C | Toll-Free Department Phone<br>Number 877-777-9705 | Payment Reduction<br>ELIGIBLE UNTIL<br>3/2/2021 | State<br>**OH** |
|---|---|---|---|
| **CONFIDENTIAL INFORMATION**<br>Re: Your Credit Card Balances | | Current Status<br>**PENDING APPROVAL** | Credit Score<br>**ALERT** |
| Steven Vanness<br>907 Woodhill Dr<br>Columbus, OH 43212-3763 | | Notice Type<br>**Consumer Debt**<br>Issued By<br>UNITED SETTLEMENT:<br>2020 Credit Card Balance Relief<br>Department | Subject<br>**Balance Reduction** |
| Date<br>1/21/2021 | Program<br>**20** Balance Relief | Regarding Estimated Balances:<br>**$67,000** | |

**EXHIBIT**
D